IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRY B. COPEMAN, | ) | 2:10-cv-01009-GEB-GGH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER   GRANTING   DEFENDANTS' |
| COUNTY OF PLACER; PLACER COUNTY | ) | MOTION FOR SUMMARY JUDGMENT |
| SHERIFF'S DEPARTMENT; JOHN | ) | |
| WEAVER; and DOES 1-50, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Defendants County of Placer, Placer County Sheriff's Department, and John Weaver seek summary judgment on all claims in Plaintiff's Complaint. Plaintiff's Complaint is comprised of claims alleged under the First and Fourth Amendments, each of which contain retaliation and conspiracy claims against Weaver and a Monell claim against Placer County and the Placer County Sheriff's Department.

Plaintiff's claims are premised on his allegations that Weaver, a Lieutenant in the Placer County Sheriff's Department, retaliated against Plaintiff in response to Plaintiff's citizen complaint against one of Weaver's subordinates. Plaintiff's allegations stem from a telephone call he made to the Placer County Sheriff's

Department for the purpose of making a citizen complaint against his neighbor, Placer County Deputy Sheriff Joseph Herrick. Weaver fielded Plaintiff's telephone call since he was Herrick's supervisor. Plaintiff argues, in his opposition brief and at the hearing on the motion, that during his telephone conversation with Weaver, Weaver retaliated against him because he disliked the citizen complaint Plaintiff was making against Herrick; and therefore, Weaver engaged in the retaliatory action of shifting the focus of the communication from Herrick's actions to whether Plaintiff posed a risk of harm to Herrick.

Plaintiff also argues Weaver further retaliated against him following the telephone conversation by falsely telling Herrick that Plaintiff threatened Herrick's life. Plaintiff also argues that when Weaver and Herrick spoke about Plaintiff's citizen complaint, they conspired to have Plaintiff investigated by another law enforcement agency based on the falsehood that Plaintiff had threatened Herrick's life, and that this investigation resulted in Plaintiff being subjected to an unconstitutional search and seizure.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust and Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When a defendant is the movant for summary judgment on one or more of a plaintiff's claims,

> [the defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

<u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the movant satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." <u>Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.</u>, 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment, . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010) (citation and internal quotation marks omitted).

Evidence must be "view[ed] . . . in the light most favorable to the non-moving party[,]" and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010) (quoting Bank of N.Y.C. v. Fremont Gen. Corp., 523 F.3d 902, 909 (9th Cir. 2008)).

## II. UNCONTROVERTED FACTS

Plaintiff and Joseph Herrick are neighbors. (Statement of Undisputed Facts in Supp. of Defs.' Mot. for Summ. J. ("SUF") ¶ 1.) Herrick and Plaintiff have an ongoing "neighbor dispute". Id. ¶¶ 2-3.

On April 17, 2009, Plaintiff called the Placer County Sheriff's Department "to speak with Herrick's Supervising Officer and to request that [the] Placer County Sheriff's Department immediately intervene to stop Herrick's . . . conduct from continuing." Id. ¶ 5. Plaintiff spoke with Herrick's supervisor, Lieutenant John Weaver about Herrick. Id. ¶¶ 9-10. The parties dispute what was communicated during

4

Plaintiff's telephone conversation with Weaver on April 17, 2009; therefore, the evidence concerning this conversation is considered in the light most favorable to Plaintiff. Plaintiff declares that during the conversation, Weaver asked Plaintiff if he "owned any firearms[.]" (Decl. of T. Copeman ¶ 7.) Weaver then asked Plaintiff: "Would you consider using them?" Id. Plaintiff declares these questions prompted his following answer: He did "own several firearms" and he "advised Weaver that [he] would never consider using [his] firearms on anyone because [he] was a Vietnam War veteran that had seen some horrible things during the war that [he] would never want to see again." Id.

Plaintiff also admits in his Complaint that he told Weaver he "was a Vietnam veteran who suffered from PTSD who had seen and done horrible things during the war and . . . never wanted to do such things again."[1] (Compl. ¶ 22.)

"On April 21, 2009 . . . Weaver spoke with . . . Herrick regarding the telephone call from [Plaintiff] and [Plaintiff's] complaints." (SUF ¶ 12.) Weaver informed Herrick that Plaintiff "said he was a Vietnam veteran, he had killed people before and that he did not want to go there again" and "that [Plaintiff] was under the care of a psychologist and suffers from Post Traumatic Stress Disorder (PTSD)." Id. ¶ 14.

> After getting off work on April 21, 2009, . . . Herrick called the El Dorado County Sheriff's Department and reported that he believed that [Plaintiff] had made a threat against his life. He told the El Dorado County Sheriff's Department that "My neighbor called my boss and said he's a Vietnam

---

[1]   Plaintiff's factual allegations in his Complaint are admissions which are admissible evidence for summary judgment. Fed. R. Evid. 801(d)(2); see Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint . . . is a judicial admission . . . .").

1  veteran and he'd killed people before and he
2  doesn't want to have to do it again."

3  Id. ¶ 16. "Herrick did not ask permission from . . . Weaver to call the
4  El Dorado County Sheriff's Department, and . . . Weaver did not instruct
5  . . . Herrick to call the El Dorado County Sheriff's Department on April
6  21, 2009." Id. ¶ 20.

7  That same day, "Deputy Tanya Hunt from the El Dorado County
8  Sheriff's Department responded to [Herrick's] call [and] . . .
9  interviewed both . . . Herrick and Plaintiff[.]" Id. ¶ 22. Plaintiff
10  declares Deputy Hunt entered his home without permission, detained him,
11  and then searched his home without permission. (Decl. of T. Copeman ¶
12  9.)

13  **III. DISCUSSION**

14  **A. First Amendment Claims Against Weaver**

15  Weaver seeks summary judgment on Plaintiff's First Amendment
16  retaliation and conspiracy claims alleged against him. (Mem. of P & A in
17  Supp. of Mot. for Summ. J. ("Mot.") 1:13:2:11.) Weaver argues, *inter*
18  *alia*, that his qualified immunity defense shields him from being exposed
19  to liability for Plaintiff's claims; however, this issue is not reached
20  because of the ruling below.

21  **1. Retaliation Claim**

22  Weaver argues he is entitled to summary judgment on
23  Plaintiff's retaliation claim since there is no evidence that Weaver
24  took adverse action against Plaintiff or had a retaliatory motive during
25  his conversation with Plaintiff on April 17, 2009, or when he spoke to
26  Herrick on April 21, 2009. (Mot. 13:17-15:26.)

27  At the hearing on this motion, Plaintiff clarified that his
28  retaliation claim against Weaver is based on Weaver's questioning of

Plaintiff during the April 17, 2009 telephone conversation and Weaver's subsequent April 21, 2009 conversation with Herrick. Plaintiff argues that when Weaver asked him if he "owned any firearms", Weaver improperly turned the spotlight onto Plaintiff and off Herrick's conduct. Plaintiff also argues that during Weaver's subsequent conversation with Herrick, Weaver did not repeat Plaintiff's exact statement and twisted Plaintiff's words to make Plaintiff's statements sound like a veiled threat.

"In order to demonstrate a First Amendment [retaliation] violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's protected] speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." <u>Mendocino Environmental Center v. Mendocino County</u> 192 F.3d 1283, 1300 (9th Cir. 1999). "[T]he proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" <u>Id.</u> To establish a retaliatory motive, Plaintiff "must: (i) establish proximity in time between [Plaintiff's] expressive conduct and the allegedly retaliatory actions; (ii) produce evidence that the defendants expressed opposition to his speech, either to him or to others; or (iii) demonstrate that the defendants' proffered explanations for their adverse actions were false and pretextual." <u>Alpha Energy Savers, Inc. v. Hansen</u>, 381 F.3d 917, 929 (9th Cir. 2004). Further, "[w]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case of unlawful . . . retaliation." <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 680-81 (9th Cir. 1997) (citation omitted).

Plaintiff indicates in his argument that Weaver's questioning during their conversation, which included asking Plaintiff if he "owned any firearms[,]" was for the purpose of deterring or chilling Plaintiff's exercise of his First Amendment right to seek redress from the Sheriff's Department employing Herrick for Herrick's use of his authority as a Deputy Sheriff to harass Plaintiff. Plaintiff also argued at the hearing on the motion that Weaver's communication violated the following portion of the Placer County Sheriff's Department's General Orders: "Department members need to be practiced, impartial listeners and <u>avoid providing retorts or excuses</u>." (Decl. of Holt, Ex. J COND 8(2) (emphasis added).) However, Plaintiff has presented no evidence that the questions Weaver ask him violated this portion of the General Orders. Nor has Plaintiff presented evidence from which a reasonable inference could be drawn that Weaver's inquiry whether Plaintiff "owned any firearms" was motivated by Weaver's desire to deter Plaintiff from making a citizen complaint against Herrick, in light of this question having been asked after Weaver had been informed about the acrimonious and ongoing neighbor dispute involving Plaintiff and Herrick.

Plaintiff also argues that Weaver retaliated against him by misrepresenting to Herrick what Plaintiff said, including the falsehood that Plaintiff used the word "killed". Plaintiff contends Weaver twisted Plaintiff's statements to make them sound like he had threatened to kill Weaver. However, comparison of the statements Plaintiff admits he made, with the statements it is uncontroverted that Weaver told Herrick Plaintiff made, reveals there is only one difference; Weaver told Herrick Plaintiff said he "had killed people before and that he did not want to go there again." (SUF ¶ 14.) Whereas Plaintiff states in his Complaint: he said he "had seen and done horrible things during the war

and . . . never wanted to do such things again." (Compl. ¶ 22.) At the hearing on the motion, Plaintiff admitted that the phrase "horrible things" encompasses killing. Therefore, it is evident that Weaver's use of the word "killed" does not have a substantially different effect or meaning from the phrase "had seen and done horrible things during the war and . . . never wanted to do such things again." Id. Therefore, Plaintiff has failed to present evidence showing that Weaver's use of the word "killed" when conveying Plaintiff's statement to Herrick was motivated to deter Plaintiff's citizen complaint.

Further, Weaver declares that he told Herrick about Plaintiff's statements "for [Herrick's] safety[.]" (Dep. of Weaver 45:19-23, 46:3-5.) Weaver also avers he thought Plaintiff's statements were "maybe even some type of veiled threat[.]" Id. 48:24. Plaintiff's admission that he had "seen and done horrible things during the war and . . . never wanted to do such things again" could suggest he thought about doing such things recently. Therefore, Plaintiff has failed to refute Weaver's legitimate explanation for telling Herrick about Plaintiff's statements.

Therefore, Weaver is granted summary judgement on Plaintiff's First Amendment retaliation claim.

**2. Conspiracy Claim**

Weaver argues he is entitled to summary judgment on Plaintiff's conspiracy claim since "Plaintiff has no evidence of a conspiracy . . . between . . . Weaver and . . . Herrick." (Mot. 20:1-2.) Plaintiff counters in his opposition brief that "[t]he disputed evidence shows that Weaver and Herrick met together to discuss the Plaintiff's allegations, and then concocted this story about 'killing people' and 'not wanting to go there again' in an effort to shift the

spotlight of the investigation away from Herrick, and onto the Plaintiff." (Opp'n 14:11-14.) However, Plaintiff's conclusory allegations and argument have not been supported by statements of fact. "A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data." Angel v. Seattle-First Nat. Bank, 653 F.2d 1293, 1299 (9th Cir. 1981). Further, "mere argument does not establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993). Therefore, Weaver is granted summary judgment on Plaintiff's First Amendment conspiracy claim.

### B. Fourth Amendment Claims Against Weaver

Weaver also seeks summary judgment on Plaintiff's Fourth Amendment claims, arguing "it is undisputed that . . . Weaver . . . did not conduct any search of plaintiff's home. Consequently, plaintiff cannot establish 'governmental action' by [Weaver]." (Mot. 18:24-27 (citation omitted).) Plaintiff counters "the disputed evidence shows that Weaver's conduct caused Herrick to make a criminal complaint which resulted in the unlawful search and seizure of Plaintiff and his home." (Opp'n 14:1-3.) However, Plaintiff fails to show that facts exist supporting his position that the referenced "disputed evidence" exists. Plaintiff's mere reference to "disputed evidence", which he has not shown exists, is tantamount to resting his opposition on "mere conclusory allegations unsupported by factual data." Angel, 653 F.2d at 1299 (9th Cir. 1981). Therefore, Weaver is granted summary judgment on Plaintiff's Fourth Amendment claims.

### C. Monell Liability

Placer County and the Placer County Sheriff's Department seek summary judgment on Plaintiff's Monell claims alleging violations of the

First and Fourth Amendments, arguing in essence that a public entity is not exposed to liability for a constitutional claim premised on a Placer County policy, when Weaver, the individual officer acting pursuant to the policy, has been found not to have inflicted constitutional harm on the Plaintiff. (Mot. 17:9-18.) "The Supreme Court [held in City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)] that a public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff." Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996). Since Weaver has prevailed on Plaintiff's First and Fourth Amendment claims, "Plaintiff failed to establish that he suffered a constitutional injury[.]" Id. Therefore, the County of Placer and Placer County Sheriff's Department are granted summary judgment on Plaintiff's First and Fourth Amendment claims.

### IV. CONCLUSION

For the foregoing reasons, each Defendant's summary judgment motion is granted. Judgment shall be entered in favor of each Defendant, and this action shall be closed.

Dated:  September 23, 2011

GARLAND E. BURRELL, JR.
United States District Judge